# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7778 | **DATE** | 5/29/2003 |
| **CASE TITLE** | Clark vs. Fairbanks Capital Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ___ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on ___ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ___ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Before the court is Defendant Fairbanks Capital Corporation's Motion for Summary Judgment as to Plaintiffs' Second Amended Complaint [57-1]. For the reasons stated on the attached order, Defendant's motion [57-1] is granted. The clerk shall enter judgment as to Defendant Fairbanks Capital Corporation pursuant to Rule 58.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 0 2 2003 | |
| | Notified counsel by telephone. | | date docketed | YS |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EDDIE CLARK and PEARL CLARK, | )<br>)<br>) |
| Plaintiffs, | ) No. 00 C 7778<br>) |
| vs. | ) HONORABLE CHARLES R. NORGLE<br>) |
| FAIRBANKS CAPITAL CORPORATION and M&T TRUST, | )<br>)<br>) |
| Defendants. | ) |

## OPINION AND ORDER

Before the court is Defendant Fairbanks Capital Corporation's Motion for Summary Judgment as to Plaintiffs' Second Amended Complaint pursuant to Fed. R. Civ. P. 56. For the following reasons, Fairbanks' motion is granted.

## I. BACKGROUND[1]

On March 11, 1999, Plaintiffs, Eddie Clark and Pearl Clark (hereinafter collectively referred to as "the Clarks"), entered into a loan transaction with Contimortgage Corporation ("Contimortgage") borrowing $86,400. In exchange for the loan, the Clarks gave Contimortgage a mortgage on their home located at 251 W. 106th Place, Chicago, Illinois. On June 3, 1999, pursuant to a written Pooling and Servicing Agreement ("PSA"), Contimortgage pooled the Clarks' loan together with a number of other loans into the Contimortgage Home Equity Loan Trust 1999-3 ("the Trust").

---

[1] The court construes all disputed facts and reasonable inferences to be drawn therefrom in favor of the Clarks, the non-movant. See Fed. R. Civ. P. 56(c).

1



Shortly after obtaining the loan, the Clarks defaulted. In February of 2000, Contimortgage initiated foreclosure proceedings against the Clarks in the Circuit Court of Cook County, Illinois. In the Spring of 2000, Contimortgage filed for Chapter 11 Bankruptcy Protection in the United States Bankruptcy Court for the Southern District of New York. On May 12, 2000, Contimortgage assigned the servicing rights to the loans contained within the Trust to Fairbanks Capital Corporation ("Fairbanks"). Def. SMF, Ex. 5. As a loan servicer for the Trust, Fairbanks was required to make reasonable efforts to collect home equity loan payments and to establish and maintain a trust account for the purpose of depositing the loan payments on a daily basis. In September of 2000, Fairbanks filed an Amended Complaint in the state court foreclosure proceeding adding itself as a party to the Clarks' foreclosure lawsuit.

On December 12, 2000, the Clarks brought this action against Defendant Fairbanks alleging violations of the Home Ownership Equity Protection Act ("HOEPA") amendments to the Truth in Lending Act ("TILA") (15 U.S.C. § 1602(aa)). Specifically, the Clarks claim that they are entitled to rescission of their loan agreement and monetary damages because Contimortgage failed to make certain required disclosures while consummating the Clarks' loan. The Clarks contend that Fairbanks, as a successor-in-interest to the Clarks loan, is liable under the HOEPA amendments to TILA for Contimortgage's failure to make the required disclosures.

On November 2, 2001, Fairbanks filed its Motion for Summary Judgment contending that it was merely the servicer of the Clarks loan, and as such it is not liable, because TILA expressly exempts loan servicers from liability. On March 13, 2002, the Clarks filed a Motion for Leave to File a Second Amended Complaint. On May 31, 2002, the court granted the Clarks' motion for leave and the Clarks filed their Second Amended Complaint adding Manufacturers and Traders Trust

2

Company ("M&T Trust") as an additional Defendant to this action. In July of 2002, Fairbanks filed its Motion for Summary Judgment as to Plaintiffs' Second Amended Complaint which is currently before the court.

## II. DISCUSSION

### A. Standard for Summary Judgment

Summary judgment is permissible when "there is no genuine issue as to any material fact and. . .the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High Sch. Dist. No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. Fed. R. Civ. P. 56(c); see also Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir.1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 280 (1968); Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). When the defendant moves for summary judgment, the court must view the record and all inferences in a light most favorable to the

plaintiff. Ameritech Benefit Plan Comm. v. Communication Workers of Am., 220 F.3d 814, 821 (7th Cir. 2000). However, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, No. 02-3373, 2003 U.S. App. LEXIS 7921, at *11 (7th Cir. April 25, 2003) citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990).

## B. The HOEPA Amendments to TILA

HOEPA, enacted in 1994, is an amendment to TILA, and is Congress' response to the substantive abuses brought by lenders who provide alternative home loans. 15 U.S.C. § 1601, *et. seq.* Generally, HOEPA lays out the guidelines, rules, and parameters governing alternative mortgages. 15 U.S.C. § 1602. HOEPA and its regulations establish a cost threshold, which once exceeded, triggers a set of restrictions on lending practices related to high risk loans. See 15 U.S.C. § 1602(aa)(1). HOEPA was enacted to prevent mortgage companies from taking advantage of the average homeowner acquiring an alternative home mortgage.

The legislative history of HOEPA, in both the Senate and House Reports, explains that the purpose of the HOEPA amendments to TILA is to address the problem of "reverse redlining," which is the practice of lenders targeting residents in certain geographic areas for credit on unfair terms. H.R.Rep. No. 103-652, at 158 (1994), U.S.Code Cong. & Admin. News 1994, pp. 1977, 1988. "The triggers in the legislation are not intended as caps, but rather to ensure that enhanced protections are provided to consumers that are most vulnerable to abuse without impeding the flow of credit." H.R.Rep. No. 103-652, at 159 (1994), U.S.Code Cong. & Admin. News 1994, pp. 1977, 1989. Such a purpose is consistent with the overall purpose of TILA, which is, among other things, to protect consumers from unfair credit practices. See 15 U.S.C. § 1601(a).

4

In Fairbanks' Motion for Summary Judgment, it claims that it cannot be liable to the Clarks for the alleged violations of the HOEPA amendments to TILA because: (1) Fairbanks is merely the servicing agent for the Clarks' loan and as such, it cannot be liable under TILA; and (2) the Clarks claims for monetary damages are untimely.[2] With the above principles in mind, the court will examine Fairbanks' motion.

## C. Fairbanks' Liability Under the HOEPA Amendments to TILA

Under TILA, liability is limited to creditors and assignees of creditors. See 15 U.S.C. §§ 1640(a) and 1641. Creditor liability is limited to "creditors who fail to comply with any requirements imposed." 15 U.S.C. § 1640(a). A creditor is defined as a "person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which a payment for a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the indebtedness or, if there is no such evidence of indebtedness, by agreement." 15 U.S.C. §§ 1602(f). Assignee liability is limited to "any assignee of such [a] creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement." 15 U.S.C. §§ 1641. TILA contains no provision expressly providing for the liability of servicing agents. In Re Jackson, 245 B.R. 23, 32 (E.D. Penn. 2000). However, a servicing agent may be treated as an assignee for liability purposes if it is or was, at some point in time, the owner of the obligation. 15 U.S.C. §§ 1641(f).

---

[2] Because the court grants Fairbanks' Motion for Summary Judgment based on the merits of this case, Fairbanks' statute of limitations argument is denied as moot.

In its Motion for Summary Judgment, Fairbanks claims it is not liable under TILA because it is neither a creditor nor an assignee of a creditor with respect to the Clarks' loan. Fairbanks asserts that because it only retained the servicing rights to the Clarks' loan, it is exempt from liability. The Clarks respond to Fairbanks' claims by arguing that Fairbanks should be estopped from claiming it is not a creditor or an assignee under TILA because: (1) Fairbanks held itself out as a creditor by initiating the state foreclosure proceeding without disclosing the identity of its principal, the M&T Trust; (2) Fairbanks controls the rescission process; and (3) Fairbanks made a judicial admission claiming it was an assignee.[3]

The Clarks assert that Fairbanks should be estopped from claiming it is not a creditor because "it stepped into the shoes of the Trust and acted as if it owned all rights in the mortgage" when it initiated foreclosure proceedings against the Clarks in the state court. Pl.s' Resp. to Def.'s Mot. for Summ. J., at 4. Plaintiffs' claim is based on common law Agency principles allowing liability for agents who contract with a third party on behalf of an undisclosed or partially disclosed principal. Id. at 3. Specifically, the Clarks assert that Fairbanks was acting on behalf of an undisclosed principal, M&T Trust, when it entered into foreclosure proceedings with the Clarks in the state court and thus, under these common law Agency principals, Fairbanks should be estopped from denying it is a creditor.

The Clarks' undisclosed principal argument fails for two reasons. First, the undisputed facts in this case show that Fairbanks timely notified the Clarks of its role as loan servicer on behalf of

---

[3]In Plaintiffs' Response to Defendant's Motion for Summary Judgment, Plaintiffs also urge the court to stay this matter pursuant to the Colorado River Doctrine. The court has previously addressed this issue and denied Plaintiff's Motion to Stay as moot. See the court's order of March 3, 2003.

M&T Trust. Fairbanks retained the servicing rights to the Clarks' loan on July 14, 2000. Def.'s Mot. for Summ. J, Ex. 5. On September 7, 2000, the Clarks filed a motion to dismiss in the state court asserting that Fairbanks had informed them that its rights in the Clarks' mortgage were limited to the servicing rights. Def.'s Mot. for Summ. J, Ex. 12. The Clarks also stated in their motion that they believed "the trustee is the real party in interest." Id. Thus, the Clarks had notice of Fairbanks' limited interest as servicing agent prior to September 7, 2000. Additionally, on September 27, 2000, Fairbanks filed an amended complaint in the state court indicating in the caption that it is the servicing agent for M&T Trust. Def.'s Mot. for Summ. J, Ex. 11. As a result, the undisputed facts show that Fairbanks disclosed its limited interest in the Clarks' mortgage as servicing agent within a short time after entering into the state court foreclosure action.

Second, the Clarks' undisclosed principal argument fails because they do not identify any facts suggesting that Fairbanks entered into a contract with the Clarks. See Fed. R. Civ. P. 56(e). In order for Fairbanks to be liable under the common law Agency principles suggested, it must contract with a third party on behalf of the undisclosed principal. See Brunswick Leasing Corp. v. Wisconsin Cent., Ltd., 136 F.3d 521, 526 (7th Cir. 1998). Here, the Clarks only assert that Fairbanks acted on behalf of its undisclosed principal, M&T Trust, when it pursued foreclosure litigation in the state court. The Clarks do not identify any facts which show that Fairbanks contracted or attempted to contract with them on behalf of an undisclosed principal. Absent any attempt by Fairbanks to enter into a contract with a third party, the Clarks' undisclosed principal theory fails. See id.

Similarly, the Clarks' argument contending that Fairbanks is liable because it controls the rescission process also fails. The Clarks assert that by controlling the rescission process, Fairbanks

acts as an agent of the assignee and therefore, it is liable under HOEPA. The Clarks point to several facts indicating that Fairbanks controlled the rescission process. However, the Clarks provide no legal authority to support its position that a servicing agent who controls the rescission process can be liable under TILA. The court is not required to consider such undeveloped and unsupported arguments. United States v. Holm, 326 F.3d 872, 877 (7th Cir. 2003); Nissan North Am. v. Jim M'Lady Oldsmobile, 307 F.3d 601, 605 (7th Cir. 2002); United States v. Jones, 224 F.3d 621, 626 (7th Cir. 2000). Furthermore, TILA expressly exempts servicing agents from liability unless the servicing agent has or had an ownership interest in the loan. 15 U.S.C. §§ 1641(f). The Clarks do not identify any facts showing that Fairbanks has or had an ownership interest in the Clarks' loan. Plaintiffs' conclusory and unsupported allegations that Fairbanks possess more than just the servicing rights in the Clarks' loan do not preclude summary judgment in this case. See Taylor v Monsanto Co., 150 F.3d 806, 809 (7th Cir. 1998).

Finally, the Clarks' argument contending that Fairbanks is liable for rescission because it judicially admitted it was an assignee fails as well. The Clarks assert that Faribanks admitted in paragraph eighteen of its Answer to Plaintiffs' Second Amended Complaint that the Clarks' "mortgage was assigned to it." The Clarks' argue that Fairbanks' answer is a judicial admission and as such, Fairbanks conceded it is an assignee of the Clarks' loan. If the Clarks' contention were true, Fairbanks could be subject to liability under TILA. See 15 U.S.C. §§ 1641.

However, the court finds that Fairbanks' answer to paragraph eighteen of Plaintiffs' Second Amended Complaint is not a judicial admission for two reasons. First, any statements Fairbanks made in its Answer to Plaintiffs' Amended Complaint are void. "Judicial admissions are concessions in the pleadings that bind the party making them and that withdraw a fact from

8

contention. Taylor, 150 F.3d at 809 (citing Keller v. United States, 58 F.3d 1194, 119 n.8 (7th Cir. 1995)). However, when the court allows a party to submit an amended pleading, the statements made in earlier pleading are not judicial admissions. 188 LLC v. Trinity Industries, Inc., 300 F.3d 730, 736 (7th Cir. 2002). Here, Fairbanks filed its Answer to Plaintiffs' Amended Complaint on April 13, 2001. On May 31, 2002, the court granted Plaintiffs' Motion for Leave to File a Second Amended Complaint. On July 1, 2002, the court granted Fairbanks' Motion for Leave to File Its Answer to Plaintiffs' Second Amended Complaint. As a result, Fairbanks' Answer to Plaintiffs' Second Amended Complaint supersedes its Answer to Plaintiffs' Amended Complaint. See id. (stating that an amended pleading ordinarily supersedes the prior pleading making the prior pleading "functus officio."). As such, Fairbanks' Answer to Plaintiffs' Amended Complaint has no legal effect.

Second, even if the court were to hold that Fairbanks' statement in paragraph eighteen of its Answer to Plaintiffs' Amended Complaint is a judicial admission, the statement does not admit that Fairbanks is an assignee who could be liable for rescission. Paragraph eighteen alleges that "[t]he mortgage was assigned to Fairbanks Capital Corporation pursuant to an asset sale." Def.'s Answer to Pl.s' Am. Compl., ¶ 18. Fairbanks admits the allegation. Id. Fairbanks asserts, and the record supports, that the Asset Purchase Agreement between Contimortgage and Fairbanks only assigned the servicing rights to the Clarks' loan to Fairbanks, not the ownership rights. The only facts in the record the Clarks identify supporting their assertion that Fairbanks was assigned the ownership rights to the Clarks' loan is paragraph eighteen of Fairbanks' Answer. This fact alone, even if it were a judicial admission, is not enough to create a genuine issue of material fact necessary to deny Fairbanks' Motion for Summary Judgment. See Adusmilli v. City of Chicago, 164 F.3d 353, 361

9

(7th Cir. 1998) (quoting Senner v. Northcentral Technical College, 113 F.3d 750, 757 (7th Cir. 1997) (stating that a "party needs more than a scintilla of evidence . . . to defeat summary judgment.").

Thus, Fairbanks' claim that it is not liable under the HOEPA amendments to TILA because it is only the servicing agent of the Clarks' loan is supported by the record. The Clarks fail to identify any facts that raise a genuine issue of material fact. As a result, summary judgment is appropriate. See Fed. R. Civ. P. 56(c); see also Murphy, 176 F.3d at 936.

## III. CONCLUSION

For the foregoing reasons, Fairbanks' Motion for Summary Judgment as to Plaintiffs' Second Amended Complaint pursuant to Rule 56 is granted.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, SR., Judge
United States District Court

DATED: 5/29/03